IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RANDY HOWARD, INDIVIDUALLY AND ON
BEHALF OF OTHERS SIMILARLY SITUATED,

　　　　　Plaintiff,

　　　　vs.　　　　　　　　　　　Case No. 10-2555-JTM

FERRELLGAS PARTNERS, L.P., FERRELLGAS
INC., FERRELLGAS, L.P., & DOES 1 THROUGH
25,

　　　　　　Defendants.

MEMORANDUM AND ORDER

Before the court is defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt.

No. 23). For the following reasons, the court grants in part and denies in part the motion.


**I. Factual Background**

This is a putative class action filed by plaintiff, Randy Howard, individually and on behalf

of others similarly situated, alleging defendants, Ferrellgas Partners, L.P., Ferrellgas, Inc., and

Ferrellgas, L.P. (collectively "Ferrellgas" or "defendants") engaged in unfair, unconscionable,

deceptive, misleading, and unlawful conduct in connection with the marketing and sale of propane.

Plaintiff, a resident of California, entered into an oral contract with Ferrellgas, a Delaware limited

partnership located in Kansas, in which Ferrellgas agreed to deliver him propane.[1] On August 27, 2008, in his initial conversation over the phone, a Ferrellgas representative told him the first fill would be at the introductory rate and thereafter he would be billed at "market price." Thereafter, Ferrellgas installed a 250 gallon tank on his property with 50 gallons of propane in it. On September 5, defendants delivered 167.50 gallons at $2.11 per gallon. On December 3, Ferrellgas delivered an additional 57.8 gallons and billed plaintiff at $4.71 per gallon. Plaintiff protested, and defendant reduced the price to $2.85 per gallon. Plaintiff contends the national average at the time was $2.37 per gallon. In addition to this bill, plaintiff also identifies four other dates in which he was allegedly charged above the national average and in breach of the oral contract—February 2, 2009, March 17, 2009, May 24, 2009, and October 18, 2009. Plaintiff challenged the price charged on two occasions and Ferrellgas reduced the price, a price plaintiff still considers above the national average and in breach of the contract. Plaintiff uses figures from the United States Energy Information Administration (EIA) to establish the "national average." The EIA's mission statement provides:

> The U.S. Energy Information Administration (EIA) is the statistical and analytical agency within the U.S. Department of Energy. EIA collects, analyzes, and disseminates independent and impartial energy information to promote sound policymaking, efficient markets, and public understanding of energy and its interaction with the economy and the environment. EIA is the Nation's premier source of energy information and, by law, its data, analyses, and forecasts are independent of approval by any other officer or employee of the U.S. Government.

UNITED STATES ENERGY INFORMATION ADMINISTRATION, *Mission and Overview*, http://www.eia.gov/about/mission_overview.cfm (July 5, 2011).

---

[1]Ferrellgas Partners, L.P. is a Delaware limited partnership located at 7500 College Boulevard, Suite 1000, in Overland Park, Kansas. It conducts activities primarily through its operating partnership, Ferrellgas, L.P., a Delaware limited partnership, also with the same principal place of business. Ferrellgas, Inc., is located in Liberty, Missouri and operates as a subsidiary and general partner of Ferrellgas Partners, L.P. Through Ferrellgas, Inc., Ferrellgas Partners, L.P. manages its transporting business, marketing, and distributing of propane to residential, industrial, commercial, and agricultural customers. Defendants have more than 590 retail outlets in over 45 states.

Ferrellgas does not send a written agreement to its customers unless one is requested. Howard did not receive the "Master Agreement for Propane Sales and Equipment Rental" (Master Agreement) until he requested it in 2010. The pricing section of the Master Agreement provides:

> **Purchase Price.** You will pay *our current market price* for Propane at the time the Propane is delivered to you if you have Bulk Service or Cylinder Exchange Service, or at the time the Propane flows through your meter if you have Meter Service.

Dkt. No. 1, pg. 9 (emphasis added). Plaintiff contends the Master Agreement is consistent with the oral contract because it states propane will be provided at "our current market price."

Additionally, plaintiff alleges Ferrellgas charges excessive termination fees to prevent customers from terminating their services. If a customer wants to end service, Ferrellgas charges a "Tank Pick-Up Charge" and a "Tank Pump-Out Charge." Plaintiff contends these excessive charges inhibited his ability to reject the propane deliveries even though he realized defendants were overcharging him for propane and he wanted to terminate his relationship with them.

Plaintiff has brought the following five claims against defendants: (1) Breach of Contract; (2) Breach of Implied Covenant of Good Faith and Fair Dealing; (3) Violation of the Kansas Consumer Protection Act (KCPA), K.S.A. § 50-623, *et seq*.; (4) Promissory Estoppel, in the alternative to the first and second causes of action; and (5) Unjust Enrichment. In the present motion, defendants seek to dismiss all claims under Fed. R. Civ. P. 12(b)(6).

## II. Legal Standard: 12(b)(6)

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give the defendant adequate notice of what the plaintiff's claim is and the grounds of that claim. *Swierkiewicz v. Sorema*

*N.A.*, 534 U.S. 506, 512 (2002). This simplified notice pleading rule is justified because of the liberal discovery rules and availability of summary judgment to dispose of unmeritorious claims. *Id.*

"In reviewing a motion to dismiss, this court must look for plausibility in the complaint . . . . . Under this standard, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Corder v. Lewis Palmer Sch. Dist No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (clarifying and affirming *Twombly's* probability standard). Allegations that raise the specter of mere speculation are not enough. *Corder*, 566 F.3d at 1223-24. The court must assume that all allegations in the complaint are true. *Iqbal*, 129 S. Ct. at 1936-37. "The issue in resolving a motion such as this is 'not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.'" *Bean v. Norman*, No. 008-2422, 2010 WL 420057, at *2 (D. Kan. Jan. 29, 2010) (quoting *Swierkiewicz* , 534 U.S. at 511). The Tenth Circuit utilizes a two-step process when analyzing a motion to dismiss. *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009). First, the court must identify conclusory allegations not entitled to the assumption of truth. *Id.* Second, the court must determine whether the remaining factual allegations plausibly suggest the plaintiff is entitled to relief. *Id.*

The court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and are undisputed. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). A court may also consider facts subject to judicial notice without converting the motion into one for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

4

### III. Analysis

*A. Breach of Contract*

First, defendants argue the court should dismiss plaintiff's breach of contract claim because he has failed to plead sufficient facts establishing a breach or damages. If plaintiff has alleged sufficient facts, defendants argue his claim is barred by the affirmative defense of accord and satisfaction.

1. Sufficient Facts

Under Kansas law, the essential elements of a contract action are: "(1) The existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to plaintiff caused by the breach." *Schumacher v. Morris*, 2009 WL 4639516, at *9 (Kan. App. 2009) (citing *Commercial Credit Corp. v. Harris*, 212 Kan. 310, Syl. ¶ 2, 510 P.2d 1322 (1973); *City of Andover v. Sw. Bell Tel.*, L.P, 37 Kan. App.2d 358, 362, 153 P.3d 561, 565 (2007)). Defendants first attack the fourth element, arguing plaintiff has not plead sufficient facts showing a breach. Specifically, defendants assert plaintiff's use of the EIA national averages to establish a breach must fail because the EIA "national average price" is not related to the "market price" to which the parties orally agreed. Defendants contend the facts do not show they charged more than market price but only that their prices exceeded the national average price as reported by the EIA. Plaintiff argues his Complaint adequately alleges breach because the averaged prices reported by the EIA are a reasonable reflection of market price. Further, he argues that a price in excess of the EIA average price, though not conclusive of a breach, gives rise to a reasonable

5

probability that defendants breached the contract by not providing propane at market prices.

This court agrees with plaintiff. At this stage in the litigation the EIA average prices provide at least a rough guideline making it plausible that defendants breached the contract by failing to deliver propane at market price. *See Corder*, 566 F.3d at 1223-24. The EIA average prices are relevant to the market price to the extent they emphasize plausibility in the Complaint. This is true even if, as defendants contend, the EIA figures do not encompass "market price" or include any prices of propane in California.[2] What the parties meant by "market price" is undefined at this point. Without knowing precisely the relevant market at which to look, the EIA's figures certainly provide an adequate benchmark to highlight the plausibility of plaintiff's allegations of breach. Plaintiff has alleged a breach by showing defendants charged in excess of the national average price, as reported by the EIA. Those allegations are enough to support a plausible claim for breach based on a failure to provide propane at "market price."

Defendants seek to hold plaintiff to a standard of proof more stringent than that required on a motion to dismiss. Plaintiff need not prove up his claim so the court can decide its ultimate validity, he needs only present enough evidence to entitle him to the opportunity to develop further the facts of his claim. Thus, defendants Motion to Dismiss Count I on this ground is denied.

Defendants also contend plaintiff failed adequately to plead damages because the price plaintiff paid was within the "range of prices" reported by the EIA for the relevant time periods. The

---

[2]Defendants state:

This Court, however, can and should take judicial notice that: (1) California does not participate in the EIA's weekly propane pricing survey; (2) the EIA's weekly price survey only includes reported prices from 24 States located on the East Coast and in the Midwest regions; (3) the EIA does not refer to its weekly propane pricing survey results as a "national average" as claimed by plaintiff; (4) the EIA only reports prices for the October-March winter heating season; and (5) the EIA's reported prices are published retrospectively.

Dkt. No. 24, pg. 14 (citing http://tonto.eia.gov/dnav/pet/PET_PRI_WFR_A_EPLLPA_PRS_DPGAL_W.htm).

following information was provided in the Complaint and the defendants' Motion (accepted as true by plaintiff) and is helpful here:

| Date of Bill | Amount Initially Billed to Plaintiff, Per Gallon | Price Paid | National Average as Reported by the EIA | Range of Prices as Reported by the EIA |
|---|---|---|---|---|
| 12/7/2008 | $4.71 | $2.85 | $2.37 | $1.54 to $3.28 |
| 2/1/2009 | $4.91 | $2.95 | $2.32 | $1.55 to $3.39 |
| 3/17/2009 | $2.81 | $2.81 | $2.25 | $1.46 to $3.01 |
| 5/24/2009 | $2.82 | $2.82 | not reported | not reported |
| 10/18/2009 | $3.22 | not alleged | $2.10 | $1.34 to $2.94 |

Dkt. No. 1, pg. 11; Dkt. No. 24, pg. 9. Plaintiff argues that even though the prices he paid were within the range of prices paid according to the EIA, he still paid above the national average price. As noted above, while plaintiff's paying above the EIA national average is not dispositive of whether defendants charged in excess of market price, it is enough factual support for a plausible case of damages. This is not to say the price paid less the national average establishes the measure of damages, but it does provide a basis for plausibility of the claim. Similarly, that plaintiff paid within the range of prices reported by the EIA does not mean he paid a reasonable price or that he paid "market price," as required by the oral contract. Defendants cannot protest the use of the EIA figures to establish a plausible case of breach and then try to use the EIA figures to establish plaintiff suffered no damages. Because plaintiff has pleaded  sufficient facts to establish a plausible case of

7

damages, defendants' motion on this ground is denied.

### 2. Accord and Satisfaction

Defendants next argue even if plaintiff has alleged sufficient facts supporting breach and damages, plaintiff's contract claims are barred by the affirmative defense of accord and satisfaction.[3] "Accord and satisfaction is an affirmative defense and must be proven by a preponderance of the evidence." *EF Hutton & Co., Inc. v. Heim*, 236 Kan. 603, 610, 694 P.2d 445, 451 (1985); *Britvic Soft Drinks, Ltd. v. ACSIS Techs., Inc.*, 265 F. Supp.2d 1179, 1185 (D. Kan. 2003). "To constitute an accord and satisfaction, there must be an offer in full satisfaction of an obligation, accompanied by such acts and declarations or made under such circumstances that the party to whom the offer is made is bound to understand that if he accepts the offer, it is in full satisfaction of and discharges the original obligation." *EF Hutton*, 236 Kan. at 610, 694 P.2d at 451. "Accord and satisfaction is a way of discharging a contract or cause of action by which the parties agree to give and accept something in settlement of the claim or demand of one against the other. The 'accord' is the agreement and the 'satisfaction' is its execution or performance." *Beech Acceptance Corp., Inc. v. Connell*, Nos. 88-1080-C, 88-1575-C, 1990 WL 193824, at *2 (D. Kan. Nov. 8, 1990). "An accord and satisfaction, as an adjustment of a disagreement as to what is due from one party to another through payment of an agreed amount, must be consummated by a *meeting of the minds* and accompanied by sufficient consideration." *EF Hutton*, 236 Kan. at 610-11, 694 P.2d at 451 (emphasis added).

---

[3]That Accord and Satisfaction is an affirmative defense and may be raised in a motion to dismiss. *See* FED. R. CIV. P. 8(c)(1); *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965). "If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule." *Miller*, 345 F.2d at 893.

This court, analyzing several Kansas Supreme Court decisions, has determined that courts must apply a heightened scrutiny when deciding whether there was "a meeting of the minds." *Beech Acceptance*, 1990 WL 193824, at *2 ("'In the absence of documents or acts *directly* evidencing a 'meeting of the minds' between [creditor] and [guarantor] that the guaranty was to be extinguished, there is no accord and satisfaction.'") (quoting *Fed. Deposit Ins. Corp. v. Addleman*, 242 Kan. 728, 731, 750 P.2d 1037, 1040 (1988)) (alterations added) (emphasis in *Beech Acceptance*).

Because Ferrellgas raised the defense, it bears the burden of proof. *See EF Hutton*, 236 Kan. at 610, 694 P.2d at 451. Defendants' theory on this affirmative defense is as follows. When plaintiff objected to three deliveries he believed were in excess of "market price," and subsequently paid a lower price and accepted delivery of the propane, the parties established an accord and satisfaction barring plaintiff from bringing a claim against defendants under the original contract to provide propane at market price. The evidence at this stage does not support a finding of accord and satisfaction. At most, defendants have alleged only that plaintiff complained about the price he was charged for propane on three occasions, the price was reduced, and he paid the reduced price. Those actions do not evidence a "meeting of the minds" by the parties establishing an agreement on a lower price as a substitute performance for defendants' obligation to provide propane at market prices. Defendants point to no facts showing either party understood plaintiff's acceptance of the lower prices discharged defendants' duty under the original contract or that his acceptance prohibited plaintiff from pursuing a claim against defendants. Simply put, defendants have not demonstrated that the parties agreed acceptance of propane at the lower price eliminated plaintiff's right to enforce the original contract. That is not to say, with further factual development, defendants could not establish an accord and satisfaction. At this time, however, the court cannot say that an accord and

9

satisfaction existed between the parties. *See Britvic Soft Drinks Ltd.*, 265 F. Supp.2d at 1186 (citing 13 CORBIN ON CONTRACTS § 1277, at 199 (interim ed. 2002) ("The question whether a payment, in money or by check, or other performance rendered by the obligor and later asserted to be in satisfaction, was so tendered to the claimant that he knew or should have known that it was tendered as full satisfaction, is a question of fact; and frequently the evidence is so conflicting or doubtful that it is a question for the jury.")); *Barnes v. Mid-Continent Cas. Co.*, 192 Kan. 401, 404, 388 P.2d 642, 645 (1964) ("Where, as in the instant case, it appears an issue of fact exists as to what the payment and the accord and satisfaction actually covered, that question is to be determined by the trier of facts on the basis of whether there has been a meeting of the minds of the parties and the unity of purpose and intention as to the extent of the settlement.").

The Kansas Supreme Court's decision in *Misco-United Supply, Inc. v. Hellar Drilling Co., Inc.*, is also instructive. 219 Kan. 575, 549 P.2d 566 (1976). Misco leased two drilling rigs to Hellar for five years with the option to buy. *Id.* at 575, 549 P.2d at 567. Three years into the lease, Hellar, behind on rental payments, offered to purchase the rigs for less than the full option price. *Id.* Misco countered at an amount still less than the full option price, and Hellar accepted. *Id.* Misco paid the sales tax on the amount and sought to have Hellar reimburse it for that amount. *Id.* at 575-76, 549 P.2d at 567. Hellar asserted a valid accord and satisfaction superceded its earlier obligations on the rental agreement, including liability for sales tax, and the trial court agreed. *Id.* at 576, 549 P.2d at 567. In affirming, the Kansas Supreme Court found a meeting of the minds based on negotiations between the parties indicating Misco's offer was a "final close-out" offer that included sales tax. *Id.* at 576-77, 549 P.2d at 567-68. Unlike *Misco*, this case contains no evidence establishing such a meeting of the minds. Consequently, the court finds defendants have not met their burden of proving

10

an accord and satisfaction existed. Defendants motion on this ground is denied.

### B. Good Faith and Fair Dealing

In Count II, plaintiff asserts a claim for breach of the implied covenant of good faith and fair dealing. Defendants seek to dismiss this count by arguing it is derivative of plaintiff's contract claim. And, because plaintiff's contract claim fails, this claim must also fail. Kansas law implies a duty of good faith in every contract. *Law v. Law Co. Bldg. Assocs.*, 42 Kan. App.2d 278, 285, 210 P.3d 676, 682 (2009). "[I]n order to prevail on an implied duty of good faith and fair dealing theory under Kansas law, plaintiffs must (1) plead a cause of action for 'breach of contract,' not a separate cause of action for 'breach of duty of good faith,' and (2) point to a term in the contract 'which the defendant[ ] allegedly violated by failing to abide by the good faith spirit of that term.'" *Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1359 (D. Kan. 1996) (quoting *Pizza Management, Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1184 (D. Kan. 1990)). "Contrary to the argument advanced by defendants, a party can breach this implied covenant *absent* a specific covenant to which it must apply. In fact, our [Kansas] Supreme Court has noted that Kansas courts will impose an obligation of good faith that would override express contract terms, except in the area of employment-at-will." *Law*, 42 Kan. App.2d at 286, 210 P.3d at 682 (emphasis in original).

Here, plaintiff has adequately plead a cause of action for breach of contract in addition to his implied covenant of good faith claim. Plaintiff has alleged defendants violated that covenant by charging prices for propane that substantially exceeded the market price. The court did not dismiss plaintiff's contract claim; thus, plaintiff's implied covenant of good faith and fair dealing claim has its anchor in Count I and will not be dismissed.

*C. KCPA Claim*

Next, defendants seek dismissal of plaintiff's KCPA claim arguing there was no consumer

transaction within Kansas and that plaintiff has not alleged that he was charged or that he paid above

market prices for propane. Plaintiff asserts violations of three provisions of the KCPA, Kan. Stat.

Ann. § 50-626(b)(2), (3), and (7).[4]

Kan. Stat. Ann. § 50-626(a) prohibits a supplier from "engag[ing] in any deceptive act or

practice in connection with a consumer transaction." Further, Kan. Stat. Ann. § 50-624(c) provides:

"'Consumer transaction' means a sale, lease, assignment or other disposition for value of property

or services *within this state* . . . to a consumer; or a solicitation by a supplier with respect to any of

these dispositions." *Id.* (emphasis added). "When a consumer transaction occurs outside Kansas, the

KCPA does not provide a nationwide basis for liability against Kansas companies, based solely upon

their presence in this state." *Shepard v. DineEquity, Inc.*, No. 08-2416, 2009 U.S. Dist. LEXIS

97245, at *32 (D. Kan. Sept. 25, 2009). Thus, this court must determine whether the alleged

---

[4]Kan. Stat. Ann. § 50-626(b) provides in pertinent part:
>    (b) Deceptive acts and practices include, but are not limited to, the following, each of which is hereby declared to be a violation of this act, whether or not any consumer has in fact been misled:
>> (2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;
>> (3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact.
>> . . .
>> (7) making false or misleading representations, knowingly or with reason to know, of fact concerning the reason for, existence of or amounts of price reductions, or the price in comparison to prices of competitors or one's own price at a past or future time;

KAN. STAT. ANN. § 50-626(b)(2), (3), (7) (2010).

violations in connection with the consumer transactions at issue occurred in Kansas.

Plaintiff has not alleged a "consumer transaction" within Kansas. Plaintiff argues only that he has sufficiently plead his KCPA claim because defendants solicited him from Kansas. Solicitation may subject a defendant to the KCPA whether it results in a sale, lease, or other disposition of property within Kansas. *See Watkins v. Roach Cadillac, Inc.*, 7 Kan. App.2d 8, 13, 637 P.2d 458, 462-63 (1981). "Solicitation in Kansas may result where a substantial number of statements about the product in question are made in Kansas." *Shepard*, 2009 U.S. Dist. LEXIS, 97245, at *35. In *Watkins*, the Kansas Supreme Court found the consumer transaction had taken place in Kansas because defendant allowed plaintiff to test drive the car in Kansas, defendant parked the car on the Kansas side of his lot, and defendant solicited plaintiff to buy the car while they were test driving it in Kansas. 7 Kan. App.2d at 13, 637 P.2d at 463. No such facts are present here.

The Complaint alleges Ferrellgas's representatives read from a script requiring them to tell consumers, like plaintiff, that it charges market price, even though it charges prices in excess of market price. Further, plaintiff states, "[g]iven Ferrellgas' Kansas headquarters, it is a reasonable inference that such corporate policies emanate from Kansas." Dkt. No. 25, pg. 26. By plaintiff's own omission, he has not alleged any Ferrellgas representative solicited him from Kansas. "The KCPA is not intended to serve as a nationwide basis for liability against Kansas companies, based solely upon their presence in this state, when the actual consumer transaction does not occur here." *Montgomery v. Sprint Spectrum, L.P.*, No. 07-2227, 2007 U.S. Dist. LEXIS 82608, at *17 (D. Kan. Nov. 6, 2007). The best he can muster is that the sales technique used by the representative "emanated" from Kansas, an assertion grounded solely in speculation. Even if such a sales tactic did emanate from Kansas, that would not be enough to support a KCPA violation. The Act requires the

solicitation occur in Kansas, not that the predicate sales technique be pioneered in Kansas and used in another state. Plaintiff has not alleged defendants solicited him from Kansas. Therefore he has not properly alleged violations of the KCPA, and his claims contained in Count III must be dismissed.[5]

### D. Promissory Estoppel and Unjust Enrichment

Last, defendant seeks to dismiss plaintiff's remaining two claims—promissory estoppel and unjust enrichment. Defendant argues that because a contract exists between the parties, plaintiff is precluded from seeking recovery under these two non-contract causes of action. Plaintiff argues that because these claims are plead in the alternative, they are valid.

"'Promissory estoppel is . . . applicable only in the absence of an otherwise enforceable contract.'" *Pizza Management, Inc.*, 737 F. Supp. at 1168 (quoting *Gilmore v. Ute City Mortg. Co.*, 660 F. Supp. 437, 439-40 (D. Colo. 1986)). Likewise, unjust enrichment claims seeking to enforce contractual duties are inappropriate. *Regal Ware, Inc. v. Vita Craft Corp.*, 653 F. Supp.2d 1146, 1151 (D. Kan. 2006) ("Because the duty is imposed by an express contract, the court finds it inappropriate to use a 'legal device to enforce noncontractual duties' to enforce these contractual duties.").[6]

Ferrellgas does not dispute the validity of the oral contract between the parties. Ferrellgas only challenges whether it breached that contract or whether plaintiff suffered damages. Because both parties agree that a valid oral contract governs defendants' duties in this case, plaintiff's attempt

---

[5]Defendants also seek dismissal of the KCPA claim by arguing their representation regarding the price was consistent with what it charged. Because the court dismisses the claim on other grounds, it is unnecessary to consider this argument.

[6]"Unjust enrichment and restitution, or quantum meruit as it is also called, are synonymous terms for the doctrine of quasi contract." *Regal Ware, Inc. v. Vita Craft Corp.*, 653 F. Supp.2d 1146, 1150 (D. Kan. 2006) (citing *Mai v. Youtsey*, 231 Kan. 419, 423, 646 P.2d 475, 479 (1982)). "[A] quasi contract is no more than a legal device to enforce noncontractual duties." *Id.* (quotations omitted).

to use promissory estoppel and unjust enrichment, even though plead in the alternative,[7] must fail. *See Orica New Zealand Ltd. v. Searles Valley Minerals Operations, Inc.*, No. 04-2310, 2005 WL 387659, at *3 (D. Kan. Feb. 17, 2005) (holding because defendant stipulated a contract between the parties existed, the plaintiff cannot prevail on a theory of unjust enrichment); *see also Pizza Management, Inc.*, 737 F. Supp. at 1168 ("Because [plaintiff] assert[s] reliance upon promises allegedly expressed in viable agreements, plaintiff'[s] promissory estoppel claim is necessarily duplicative of [his] breach of contract claims."). Therefore, plaintiff cannot maintain his claims for promissory estoppel and unjust enrichment, and defendants' Motion to Dismiss these claims is granted.

Plaintiff makes one last ditch effort to save these claims by arguing they are valid if the contract is "void, unenforceable, rescinded or waived by the party seeking to recover." *See Ice Corp. v. Hamilton Sundstrand, Inc.*, 444 F. Supp.2d 1165, 1170-71 (D. Kan. 2006). While plaintiff is correct that these claims would be appropriate in those situations, the contract here is not void, unenforceable, rescinded, or waived. In fact, the court found plaintiff adequately stated a claim for breach of contract. Plaintiff must now establish he is entitled to recover on his breach of contract action; however, he does not need to establish the validity of that contract.

### E. Leave to Amend Complaint

Plaintiff also requests leave to amend his Complaint. Under Fed. R. Civ. P. 15(a)(1)(A)-(B) a party may freely amend its complaint within "21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days

---

[7]The court notes only promissory estoppel was plead in the alternative.

after service of a motion . . . whichever is earlier." At all other times the party must seek leave of the court to amend its pleading. FED. R. CIV. P. 15(a)(2). "When a party files a proper motion for leave to amend, rule 15(a) further provides 'leave shall be freely given when justice so requires.'" *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1185 (10th Cir. 1999) (quoting FED. R. CIV. P. 15(a)). Generally, a party must first file a motion to amend before the court will grant leave to amend. *Id.* at 1185-86. If a party does not file a formal motion to amend its pleading the Tenth Circuit provides that "a request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment before the court is required to recognize that a motion for leave to amend is before it." *Id.* at 1186-87. However, it is "insufficient where the plaintiffs made a bare request in their response to a motion to dismiss 'that leave be given to the Plaintiffs to amend their Complaint.'" *Id.* at 1186 (quoting *Glenn v. First Nat'l Bank*, 868 F.2d 368, 370 (10th Cir. 1989)).

In his Response plaintiff requested the following: "In the event that the motion to dismiss is granted in part or its entirety, Plaintiff requests that he be permitted leave to amend the Complaint. It would constitute Plaintiff's first and only amendment to date." Dkt. No. 25, pg. 32 n.29. Applying *Calderon*, such a bare request for leave to amend at the end of a response to another motion is not sufficient for Rule 15(a)(2); thus, plaintiff's request for leave to amend is denied. *See* 181 F.3d at 1186.

IT IS ACCORDINGLY ORDERED this 1st day of August, 2011, that defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 23) is granted in part and denied in part. The court denies the motion as to Counts I and II but grants the motion as to Counts III, IV, and V.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE