IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Randy Howard
*Individually and on behalf of all other similarly situated*,

       Plaintiffs,

          vs.                      Case No. 10-2555-JTM

Ferrellgas Partners, L.P. *et al.*,

       Defendants.

MEMORANDUM AND ORDER

The present matter arises on defendants' (collectively "Ferrellgas") Motion to Compel Arbitration (Dkt. No. 37) under 9 U.S.C. §§ 3-4. Ferrellgas contends the parties are bound by an arbitration clause contained in the "Master Agreement" that requires Mr. Howard submit to arbitration individually. Ferrellgas has not met its burden of proving that the court must compel arbitration. Accordingly, Ferrellgas' Motion is denied. But the court orders limited discovery regarding two material issues. First, the court is without sufficient facts to determine the choice-of-law issue. Second, the scope of the oral contract and the applicability of the Master Agreement are unclear.

**I. Factual Background**

On August 27, 2008, Ferrellgas installed a 250 gallon propane tank on Mr. Howard's property and filled it with 50 gallons of propane. Compl. ¶ 26. Ferrellgas delivered an additional 167.70 gallons of propane on September 5, 2008. *Id*. (These first two propane deliveries will be

referred to as the "initial fill.") Sometime prior to these service calls, Mr. Howard called a Ferrellgas representative to request propane service. Doc. 38 at 6. According to Ferrellgas, "Mr. Randy Howard became a customer of Ferrellgas on August, 21, 2008." Doc. 38 Mater Decl. ¶ 8.  Mr. Howard contends that "[t]he representative stated that the first fill would occur at an introductory rate and that subsequently the price of propane would be billed at market price." Compl. ¶ 23. Ferrellgas billed Mr. Howard for the initial fill at the introductory rate on September 9, 2008, which he paid on September 19. *Id*. ¶ 28. Ferrellgas next delivered propane to Mr. Howard on December 3, and originally billed him above the introductory rate. *Id*. ¶ 30.

On September 26, 2008, Computer Mailing Inc., mailed a copy of a written Master Agreement to Mr. Howard on behalf of Ferrellgas. Doc. 38 Mater Decl. ¶ 11. The 25-page Master Agreement contained Ferrellgas' standard terms regarding its propane service and a lengthy arbitration provision which included:

> YOU ACKNOWLEDGE THAT YOU HAVE A RIGHT TO LITIGATE CLAIMS IN COURT BEFORE A JUDGE OR JURY, BUT YOU PREFER TO RESOLVE ANY SUCH CLAIMS THROUGH ARBITRATION AND KNOWINGLY AND VOLUNTARILY WAIVE YOUR RIGHTS TO LITIGATE SUCH CLAIMS IN COURT BEFORE A JUDGE OR JURY, UPON ELECTION OF ARBITRATION BY YOU OR BY US. YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION, EVEN IF SUCH CLASS ACTION IS PENDING ON THE EFFECTIVE DATE OF THIS ARBITRATION PROVISION, EXCEPT THAT THIS ARBITRATION PROVISION WILL NOT PRECLUDE YOUR PARTICIPATION IN A CLASS WHICH HAS ALREADY BEEN CERTIFIED ON THE EFFECTIVE DATE OF THIS ARBITRATION PROVISION. THIS SECTION 8 APPLIES ONLY TO THE EXTENT PERMITTED UNDER YOUR STATE LAW.

Doc. 38 Ex. F, at 19-20.

In his Complaint, Mr. Howard denied receiving a copy of the Master Agreement until 2010 and concluded it was Ferrellgas' policy not to ship a copy unless requested. Compl. ¶¶ 33-34.

However, it appears that Mr. Howard now concedes that Ferrellgas did, in fact, mail a copy of the Master Agreement, at an earlier point. Doc. 42 at 5. ("In fact, Ferrellgas had supplied a propane tank . . . well before Ferrellgas had even sent Plaintiff the Master Agreement.") The Master Agreement included three ways for the consumer to accept the agreement:

> **PLEASE READ THIS MASTER AGREEMENT FOR PROPANE SALES AND EQUIPMENT RENTAL (this "Agreement") CAREFULLY. The terms and conditions of this Master Agreement will be accepted by you when one of the following occurs: (1) you request or accept delivery of propane, service or equipment from us; (2) you pay for delivery of propane, service or equipment from us; or (3) you permit Propane or equipment obtained from us to remain on your property for more than thirty (30) days after your receipt of this Agreement. If you do not wish to be bound by this Agreement, please contact Ferrellgas within thirty (30) days after your receipt of this Agreement and terminate service. The terms of this Agreement also will apply to sales of refined fuel products.**

Doc. 38 Ex. F, at 3.

Ferrellgas contends Mr. Howard accepted the Master Agreement by "allowing the propane tank to remain on his property for more than thirty days after his receipt of the Master Agreement, by accepting delivery on December 3, 2008, of 57.80 gallons of propane, and by paying for his December 3, 2008 delivery of propane on December 29, 2008." Doc. 38 at 7. Mr. Howard admits these facts, but disputes that this behavior constituted acceptance of the Master Agreement.

Mr. Howard claims he entered into an oral contract with Ferrellgas which applied to the initial fill and subsequent deliveries. He contends the Master Agreement was an offer to modify the terms of the oral contract, which he never accepted, and that the "[t]he Oral Contract was not conditional on the Master Agreement . . . ." Doc. 42 at 5. Ferrellgas argues that the oral agreement only applied to the initial fill and that subsequent deliveries were "predicated on Mr. Howard's agreement to [the Master Agreement's] terms and conditions." Doc. 43 at 6.

## II. Legal Standard: Motion to Compel Arbitration

3

"Before granting a stay of litigation pending arbitration, a district court must determine that an agreement to arbitrate exists." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997) (citations omitted). The Federal Arbitration Act reflects a strong federal public policy in favor of the enforcement of arbitration agreements. *ARW Exp. Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995). Normally, if a contract contains an arbitration clause, there is a presumption of in favor of arbitration. *Id.* When the parties dispute the existence of an agreement to arbitrate, the presumption disappears. *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998). The court may compel arbitration only when satisfied that the making of the agreement is not at issue. *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004). "Generally, courts should apply state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute." *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006).

"Under Kansas law, the question whether the parties have created a binding contract depends on their intent and is a question of fact." *Klima v. The Evangelical Lutheran Good Samaritan Soc.*, 10-1390-JAR, 2011 WL 2473268, at *3 (D. Kan. June 21, 2011) (citing *Reimer v. Waldinger Corp.*, 265 Kan. 212, 214, 959 P.2d 914, 916 (1998)). "In seeking to compel arbitration, defendants bear the initial burden to present evidence sufficient to demonstrate an enforceable agreement to arbitrate. Once defendants have met this burden, plaintiff must show a genuine issue of material fact as to the making of the agreement. This creates a summary judgment-like standard that the court applies in deciding whether to compel arbitration." *Id.* (citations omitted). "When parties dispute the making of an agreement to arbitrate, a jury trial on the existence of the agreement is warranted unless there are no genuine issues of material fact regarding the parties' agreement." *Avedon Eng'g, Inc.*, 126 F.3d at 1283.

**III. Analysis**

*A. Choice of Law*

"The first step in evaluating whether the arbitration term was included . . . should be a determination of what state's law controlled the formation of that contract." *Avedon Eng'g, Inc.*, 126 F.3d at 1284. In diversity actions, courts must apply the substantive law that the Kansas state courts would apply, including its choice of law rules. *Klocek v. Gateway, Inc.*, 104 F. Supp.2d 1332, 1336 (D. Kan. 2000). "Kansas courts apply the doctrine of *lex loci contractus*, which requires that the Court interpret the contract according to the law of the state in which the parties performed the last act necessary to form the contract." *Id.* When an acceptance is given by telephone, the place of contracting is where the acceptor speaks his acceptance. *Morrison v. Hurst Drilling Co.*, 212 Kan. 706, 707, 512 P.2d 438, 439 (1973).

"Several Kansas cases have concluded the law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred." *Layne Christensen Co. v. Zurich Canada*, 30 Kan. App.2d 128, 143, 38 P.3d 757, 767 (2002) (quoting *Sys. Design & Mgmt. Info., Inc. v. Kansas City Post Office Emps. Credit Union*, 14 Kan. App. 2d 266, 268, 788 P.2d 878, 881 (1990)). "Generally the party seeking to apply the law of a jurisdiction other than the forum has the burden to present sufficient facts to show that other law should apply." *Id.* at 143-144, 38 P.3d at 767; *Found. Prop. Invs. L.L.C. v. CTP, L.L.C.*, 37 Kan. App.2d 890, 894-95, 159 P.3d 1042, 1046-47 (2007), *aff'd*, 286 Kan. 597, 186 P.3d 766 (2008); *Heckert Const. Co., Inc. v. Sinclair Oil Corp.*, 10-1151-CM, 2012 WL 461427, at *5 (D. Kan. Feb. 13, 2012).

Ferrellgas urges the court to apply California law to determine whether Mr. Howard agreed to the arbitration clause. Ferrellgas argues Mr. Howard accepted the Master Agreement through

conduct which occurred in California. Doc. 43 at 4. Alternatively, California law would be appropriate if Mr. Howard accepted an oral offer from Ferrellgas in California because "the place of contracting is where the acceptor speaks his acceptance." *Morrison*, 212 Kan. at 707, 512 P.2d at 439. According to Mr. Howard, Ferrellgas "invited consumers to make an offer to purchase propane from Ferrellgas." Doc. 42 at 9. He contends that Ferrellgas accepted his offer which formed a valid oral contract, thus, the location of contract formation was where the Ferrellgas representative was located.

The court needs more facts regarding the formation of the oral contract. Currently, the court has limited information regarding the contents of the phone call between Mr. Howard and the Ferrellgas representative. If Mr. Howard accepted an offer from Ferrellgas, the oral contract was formed in California assuming Mr. Howard spoke from California. If Ferrellgas accepted an offer from Mr. Howard, the contract was formed in the state where the Ferrellgas representative was located. Ferrellgas has the "burden to present sufficient facts to show" that California law should apply. *Layne Christensen Co*., 30 Kan. App.2d at 143-144, 38 P.3d at 767. If Ferrellgas is unable to do so, the court will apply Kansas law because forum law is generally preferred. *Id*. Because Ferrellgas has not yet met this burden, the court will apply basic Kansas contract principles while deciding preliminary issues.

### B. Ferrellgas and Mr. Howard Entered Into an Oral Contract Before August 27, 2008

The first substantive issue is whether an oral agreement existed between the parties before the initial tank installation and fill. There are enough facts to conclude the parties entered a valid oral agreement. According to K.S.A § 84-2-204, "[a] contract for sale of goods may be made in any manner sufficient to show agreement including conduct by both parties which recognizes the

existence of such a contract." The Tenth Circuit has interpreted that a contract for goods "may be made in any manner to show agreement, requiring merely that there be some objective manifestation of mutual assent, but that there must be." *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1576 (10th Cir. 1984). Additionally, an agreement can constitute a contract for sale even though the moment of its making is undetermined. K.S.A. § 84-2-204 (2011).

Here, the record indicates the Mr. Howard and Ferrellgas entered into an oral agreement before Ferrellgas installed the tank and performed the initial fill. Mr. Howard allowed Ferrellgas to install the tank, return to his property to fill the tank, and then paid for the propane he received. Ferrellgas performed the tank installation, billed Mr. Howard, and considered him a "customer" beginning on August 21, 2008. This conduct is sufficient to establish the existence of a valid oral contract before the tank installation and initial fill.

### C. The Scope of the Oral Agreement and Master Agreement Are Unclear

The scope of the oral agreement is material as to whether or not Mr. Howard accepted the Master Agreement. If the oral agreement established continuous propane service, then the Master Agreement might have been an offer to modify the existing oral contract. The applicability of the oral agreement is central to Mr. Howard's claim because his primary assertion is that Ferrellgas charged higher than "market price" for propane after the initial fill contrary to the terms of the oral agreement. Ferrellgas argues there were two agreements, an oral agreement which ended after the initial fill, and the Master Agreement which applied to all subsequent service. If any oral agreement covered only the initial installation and fill, the Master Agreement might govern the long-term relationship between the parties and the arbitration clause would apply. Mr. Howard attempts to establish the existence of a continuing oral agreement by making general statements about the

7

contents of the phone call before the initial installation. He contends "[i]n the Telephone Call it was agreed that Ferrellgas would install a propane tank and supply propane at market price to Plaintiff." Doc. 42 at 9. Mr. Howard argues that service after the intial fill was never made conditional on acceptance of the Master Agreement. Doc. 42 at 12.

Ferrellgas argues that, "Plaintiff has presented no evidence that Ferrellgas intended to be bound to the oral agreement Plaintiff claims he made." Doc. 43 at 5. Ferrellgas presents evidence that it mailed the Master Agreement, and that several terms within the Master Agreement establish that further propane service is conditional on its acceptance. Doc. 43 at 6. Ferrellgas also cites the specific nature of the terms of the Master Agreement compared to the bare terms of the oral contract. *Id*.

According to the summary judgment-like standard, a motion to compel arbitration is appropriate if there are "no genuine issues of material fact regarding the parties agreement" to arbitrate. *Avedon Eng'g, Inc.*, 126 F.3d at 1283. Mr. Howard has presented sufficient evidence to indicate there was a valid oral agreement in place regarding the initial installation and fill. Ferrellgas' evidence suggests it intended to enter a limited oral agreement and intended the Master Agreement to apply to all service after the initial fill. However, Ferrellgas has not provided sufficient evidence to establish that subsequent service was made conditional on acceptance of the Master Agreement. The scope of the oral agreement and whether the Master Agreement applied to later deliveries is disputed at this time.

IT IS ACCORDINGLY ORDERED this 24th day of August, 2012, that defendants' Motion to Compel Arbitration is denied.

IT IS FURTHER ORDERED that the parties shall take limited discovery as to the appropriate choice-of-law as well as the scope of the oral and Master Agreements. Such

discovery shall conclude no later than October 19, 2012. Thereafter, the parties shall file simultaneous briefs on the applicability of the Master Agreement and the arbitration clause therein by November 16, 2012. Responses shall be filed by December 7, 2012.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE