IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RANDY HOWARD, Individually and
on Behalf of All Others Similarly
Situated,

        Plaintiff,

v.                                                 Case No. 10-2555-JTM

FERRELLGAS PARTNERS, L.P.,
FERRELLGAS, L.P., FERRELLGAS, INC.
and Does 1 through 25,

        Defendants.

MEMORANDUM AND ORDER

The court has before it the defendants' Motion to Compel Arbitration (Dkt. 37). The majority of the relevant factual background material was set forth in the court's initial order on this motion (Dkt. 45), wherein the court deferred ruling on the defendants' motion, finding that Ferrellgas had not yet met the burdens required for its motion. Rather than denying the motion, the court instead allowed for discovery on the choice-of-law issue and the scope of the oral agreement and the Master Agreement. The parties have completed discovery on these issues and briefed them fully. After thoroughly reviewing the briefs and evidence, the court is prepared to rule. For the following reasons, the court denies the defendants' motion.

**I. Legal Standard: Motion to Compel Arbitration**

"Before granting a stay of litigation pending arbitration, a district court must determine that an agreement to arbitrate exists." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d

1279, 1283 (10th Cir. 1997) (citations omitted). The Federal Arbitration Act reflects a strong federal public policy in favor of the enforcement of arbitration agreements. *ARW Exp. Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995). Normally, if a contract contains an arbitration clause, there is a presumption in favor of arbitration. *Id*. When the parties dispute the existence of an agreement to arbitrate, the presumption disappears. *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998). The court may compel arbitration only when satisfied that the making of the agreement is not at issue. *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004). "Generally, courts should apply state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute." *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006).

"Under Kansas law, the question whether the parties have created a binding contract depends on their intent and is a question of fact." *Klima v. The Evangelical Lutheran Good Samaritan Soc.*, 10-1390-JAR, 2011 WL 2473268, at *3 (D. Kan. June 21, 2011) (citing *Reimer v. Waldinger Corp.*, 265 Kan. 212, 214, 959 P.2d 914, 916 (1998)). "In seeking to compel arbitration, defendants bear the initial burden to present evidence sufficient to demonstrate an enforceable agreement to arbitrate. Once defendants have met this burden, plaintiff must show a genuine issue of material fact as to the making of the agreement. This creates a summary judgment-like standard that the court applies in deciding whether to compel arbitration." *Id*. (citations omitted). "When parties dispute the making of an agreement to arbitrate, a jury trial on the existence of the agreement is

warranted unless there are no genuine issues of material fact regarding the parties' agreement." *Avedon Eng'g, Inc.*, 126 F.3d at 1283.

**II. Analysis**

*A. Choice of Law*

"The first step in evaluating whether the arbitration term was included . . . should be a determination of what state's law controlled the formation of that contract. *Avedon Eng'g, Inc.*, 126 F.3d at 1284 (10th Cir. 1997). In diversity actions, courts must apply the substantive law that the Kansas state courts would apply, including its choice of law rules. *Klocek v. Gateway, Inc.*, 104 F. Supp.2d 1332, 1336 (D. Kan. 2000). "Kansas courts apply the doctrine of *lex loci contractus*, which requires that the Court interpret the contract according to the law of the state in which the parties performed the last act necessary to form the contract." *Id*. When an acceptance is given by telephone, the place of contracting is where the acceptor speaks his acceptance. *Morrison v. Hurst Drilling Co.*, 212 Kan. 706, 707, 512 P.2d 438, 439 (1973).

"Several Kansas cases have concluded the law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred." *Layne Christensen Co. v. Zurich Canada*, 30 Kan. App.2d 128, 143, 38 P.3d 757, 767 (2002) (quoting *Sys. Design & Mgmt. Info., Inc. v. Kansas City Post Office Emps. Credit Union*, 14 Kan. App. 2d 266, 268, 788 P.2d 878, 881 (1990)). "Generally the party seeking to apply the law of a jurisdiction other than the forum has the burden to present sufficient facts to show that other law should apply." *Id*. at 143-144, 38 P.3d at 767; *Found. Prop. Invs. L.L.C. v. CTP, L.L.C.*, 37 Kan. App.2d 890, 894–95, 159 P.3d 1042, 1046–

3

47 (2007), *aff'd*, 286 Kan. 597, 186 P.3d 766 (2008); *Heckert Const. Co., Inc. v. Sinclair Oil Corp.*, 10-1151-CM, 2012 WL 461427, at *5 (D. Kan. Feb. 13, 2012).

In its initial order on this motion, the court stated that it "needs more facts regarding the formation of the oral contract." *See* Dkt. 45, p. 6. Specifically, the court noted that "Ferrellgas has the 'burden to present sufficient facts to show' that California law should apply." *Id.* (citation omitted). The court noted that "[i]f Ferrellgas is unable to do so, the court will apply Kansas law because forum law is generally preferred." *Id.* In its order, the court found that Ferrellgas had not yet met this burden. Rather than presenting any additional facts to show which party offered and which party accepted, Ferrellgas has opted to argue the facts asserted by its opponent. The court's analysis on this issue is necessarily simple. With no new facts, the court's initial finding on this issue is unchanged: Ferrellgas has not met its burden of showing that California law should apply. The court continues to apply basic Kansas contract principles while deciding preliminary issues.

*B. Scope of the Oral Agreement and Master Agreement*

Applying Kan. Stat. Ann. § 84-2-204 in its previous order, the court found that there were "enough facts to conclude the parties entered a valid oral agreement." The parties both agree that they entered into an oral agreement for the initial tank installation and fill. However, the scope of the oral agreement remains in genuine dispute. This issue is material as to whether or not Howard accepted the Master Agreement. If the oral agreement established continuous propane service, then the Master Agreement might have been an offer to modify the existing oral contract. If the

4

oral agreement made it clear that any subsequent propane refills would be conditioned on Howard's acceptance of the Master Agreement, then the Master Agreement applied to the later deliveries.

According to the summary judgment-like standard, a motion to compel arbitration is appropriate only if there are "no genuine issues of material fact regarding the parties agreement" to arbitrate. *Avedon Eng'g, Inc.*, 126 F.3d at 1283. In its order deferring the motion, the court found that Howard had "presented sufficient evidence to indicate there was a valid oral agreement for the initial installation and fill." Further, the court found that Ferrellgas had not "provided sufficient evidence to establish that subsequent service was made conditional on acceptance of the Master Agreement." Dkt. 45, p. 8. After reviewing the parties' briefs and evidence, the court finds that the song remains the same; a genuine dispute still exists as to whether subsequent propane service was conditioned on Howard's acceptance of the Master Agreement.

Ferrellgas provided the deposition testimony and affidavit of Stacey E. Hogan, call center supervisor for Ferrellgas in Vancouver, Washington. *See* Dkts. 60-3 & 60-5. Hogan has been a Ferrellgas call center supervisor in Vancouver since 2007. Dkt. 60-3, p. 4. She supervised Adrian Williams, the representative who spoke with Howard on the phone. *Id.* at 6. Williams no longer works for Ferrellgas. *Id.* According to Hogan, the customer service representatives are not allowed to enter into agreements that extend beyond the initial tank installation and fill with new customers. Dkt. 60-5, ¶ 6. Hogan also states that Ferrellgas's policy is to make additional propane fills conditioned upon the new customer's acceptance of the Master Agreement. *Id.* at ¶ 7.

5

Although Hogan has no personal knowledge of the details of the phone conversation, her testimony tends to establish the boundaries that restrict all customer services representatives' interactions with customers. However, Hogan also testified that the company uses a script in its sales representative training materials, a copy of which Howard entered as an exhibit with his brief. *See* Dkt. 61-3, p. 11–14. The script has been in existence since before the oral contract was entered by the parties. *Id.* at 14. Hogan could not state whether the representative who spoke with Howard had used the script during the call, but it is available on the company's intranet for the representatives to access. *Id.* at 13. Hogan mentioned that the company had printed the script out in the past but had problems with the representatives reading the script verbatim "so they sounded very robotic." *Id.* at 13.

This script provides examples of statements a representative might make during a sales call. Dkt. 61-5. It includes a statement that Ferrellgas can get the customer "signed up today." The script states that "there's no paperwork for you to fill out. I can take all the information over the phone to get you started today." These statements do not clearly establish the scope of any agreement a representative might enter, but they weigh against any indication of a condition of future assent to the Master Agreement. In fact, the script is devoid of any reference to future agreements. A customer who receives the Master Agreement in the mail a month later would likely be surprised to find that there was, in fact, paperwork coming their way.

The script shows that Ferrellgas representatives offer three plans in their sales calls, two of which allow for ongoing and continuous service without any reference to a

6

future agreement. Speaking to the customer about the Advantage Plan, a Ferrellgas representative reading the script verbatim would say: "On this plan you never have to call us to place an order." Speaking about the Premier Plan, the representative would say: "you will never run out of propane—GUARANTEED!" Either of these descriptions would lead a customer to believe he or she is signing up for ongoing and continuous propane service.

Whether the script was used during Howard's call to Ferrellgas is irrelevant. But the script does not show that the representatives are trained to mention the conditional nature of future fills under their plans. Howard believed that the plan he had agreed to included ongoing and continuous service. The script, which describes two of the plans in that manner with no conditions, provides a basis for Howard's impression.

The script also counters Hogan's testimony about the scope of authority the representatives have to enter into contracts. If a representative used the script to describe the plans to the customer, then stated "there's no paperwork for you to fill out," and "I can take all the information over the phone to get you started today," that customer would have no reason to believe that the plans were conditioned on their assent to a second agreement.

Ferrellgas also produced the notes of the customer service representative who fielded Howard's call. Dkt. 60-4. The representative wrote that Howard had requested a tank set as soon as possible. *Id.* She wrote the statistics of the tank and her quote of $2.10 per gallon for the initial fill, as well as the $65 per year tank rental fee that would apply after the first year. *Id.* Ferrellgas argues that the lack of reference to ongoing service is

7

evidence that the contract established over the phone did not include such service. However, this fact does nothing to foreclose that possibility. Hogan testifies that no specific price for future fills could be established at the time of a customer's initial phone call due to market fluctuations of the price of propane. Dkt. 60-3, p. 7. This fact alone could explain why the representative made no notes regarding the price of future fills. Also, the representative's notes did not include any reference to future agreements, which is what Ferrellgas had the burden of showing. Finally, Hogan's answer to the question "What if the customer asks what the price [of future fills] will be?" is important for what it does not say. Hogan testifies that the representative responds by "try[ing] to educate the customer on propane," referring to its fluctuating price. *Id.* She does not testify that representatives tell the customer that the future fills will require a separate contract or that the scope of the agreement they are discussing does not cover future fills.

Ultimately, the court finds the situation to be as it was before. The parties agree there was an oral agreement, but there is still a genuine dispute as to its scope. A reasonable trier of fact could find that the scope of the oral agreement extended to future propane fills. This finding would foreclose application of the Master Agreement and its arbitration clause to these claims. As a result, a genuine dispute remains regarding the parties' agreement to arbitrate. *Avedon Eng'g, Inc.*, 126 F.3d at 1283. The court may not compel arbitration unless satisfied that the making of the agreement is not at issue. *Nat'l Am. Ins. Co.*, 362 F.3d at 1290. Accordingly, the court denies Farrellgas's motion.

9

IT IS THEREFORE ORDERED this 15th day of February, 2013, that Ferrellgas's Motion to Compel Arbitration (Dkt. 37) is denied.

s/ J. Thomas Marten  
J. THOMAS MARTEN, JUDGE